**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clifford E. DAVIS, Defendant-Appellant.**

**No. 431–70.**

United States Court of Appeals, Tenth Circuit.

May 6, 1971.

<hr />

John A. Ramsey, Denver, Colo., for defendant-appellant Davis.

James F. Housley, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., on the brief) for plaintiff-appellee.

Before LEWIS, Chief Judge, ADAMS *, Circuit Judge, BROWN, District Judge.

ADAMS, Circuit Judge.

The question raised by this appeal is whether comments by the trial judge so intimidated defendant's attorney that defendant was denied the effective assistance of counsel.

Defendant, Clifford E. Davis, was convicted in a trial before a jury on two counts of violating 21 U.S.C. § 331(q)

(2) by unlawfully selling to a narcotics agent a quantity of pentobarbital and secobarbital, "depressant or stimulant drug[s]" within the meanin of 21 U.S.C. § 321(v) (1).[1]

Following extensive pre-trial motions and hearings, Davis' case was called for trial on April 21, 1969. At that time, Davis' attorney, Mr. Hansen, attempted to discuss with the court the desire of a defendant in a different matter to have Mr. Hansen serve as her counsel.

A colloquy between the court and counsel then occurred. Set forth *in extenso* in the appendix is the part of the colloquy particularly apposite to this appeal. We note that much of what counsel for the defendant said and did may be subject to some criticism. However, that is not the issue here. The question with which we must deal is whether the exchange between court and counsel functioned, in effect, to deprive the defendant of effective assistance of counsel.

As stated by the Fifth and Eighth Circuits, for admonitions to counsel "to constitute ground[s] for reversal, it must appear that in some way the judge's conduct operated to deprive the defendant of his right to * * * [the] effective assistance of counsel * * *" Bursten v. United States, 395 F.2d 976, 983 (5th Cir. 1968); Johnson v. United States, 356 F.2d 680, 683 (8th Cir. 1966); cf. Paddock v. United States, 320 F.2d 624, 627 (9th Cir. 1963). When counsel is so unnerved that he cannot "devote his best talents to the defense of his client, then this is ground for reversal, no matter what counsel's experience and equipoise may be." *Bursten, supra* 395 F.2d at 983.

The trial court's comments in this case clearly appear to have intimidated defendant's attorneys. One of the defense attorneys stated in open court during the course of the exchange that he felt the

<hr />

* Of the Third Circuit, sitting by designation.

1. §§ 331(q) (2) and 321(v) (1) have now been superseded by the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*

court had demeaned counsel and that such counsel was afraid to be a vigorous advocate for fear of the judge's reaction. After the court had told counsel three times that counsel needed a lawyer for himself, had questioned counsel's competence, and had stated that the court would have counsel investigated by the Disciplinary Committee of the Bar Association, counsel moved for trial before a different judge in the district. We believe the judge had an obligation to grant counsel's motion, and under the unusual circumstances in this case failure to grant this motion denied the defendant effective assistance of counsel. *But compare* Cooper v. United States, 403 F.2d 71, 73 (10th Cir. 1968).

There is an additional matter upon which we consider it appropriate to comment. The government's chief witness against the defendant was the special agent in charge of the Salt Lake City District Office of the Federal Bureau of Narcotics and Dangerous Drugs, Chris V. Saiz. He testified that Davis sold him the drugs on the two occasions in question—allegations which Davis vigorously denied with respect to one of the times, and admitted but defended with an affirmative defense with respect to the other. On July 24, 1969, Saiz was indicted by a federal grand jury in the Central District of California for conspiring to corrupt justice in violation of 18 U.S.C. § 1503, to make false statements in violation of 18 U.S.C. § 1001, to commit perjury in violation of 18 U.S.C. § 1621, to suborn perjury in violation of 18 U.S.C. § 1622, and to deprive willfully one·Romero of his constitutional rights in violation of 18 U.S.C. § 242. The purpose of the Saiz conspiracy was to convict Romero of violating federal narcotics laws. Saiz pleaded guilty to count twelve of the indictment, thereby admitting the civil rights violation, and received a one year suspended sentence. The other counts—including those charging perjury—were dismissed. The period of the alleged conspiracy was May 10, 1966 until March 5, 1969, thereby encompassing the time in which the sales charged here—December 26, 1968 and February 10, 1969—were made.

A recent decision of the Ninth Circuit reviewing a case in which Saiz also testified has considered what disposition should be made of a case similar to the present one. Judge Duniway said:

"We do not consider the dismissal of the other counts, obviously part of a plea bargain, as rehabilitating the veracity of Saiz or Downing for the purposes of Chisum's case.

In our opinion, this case is not governed by the ordinary rules governing motions for a new trial. Rather, it falls within the principles announced in Mesarosh v. United States, 1956, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1". United States v. Chisum, 436 F.2d 645, 648 (9th Cir. 1971).

In *Mesarosh*, the government advised the Supreme Court that one of its witnesses had lied in several other proceedings, and requested a remand to the district court to determine the question of the witness' truthfulness at the trial of the *Mesarosh* case. Since the government's statement raised a doubt about the witness' veracity, the Supreme Court, exercising its supervisory jurisdiction over federal courts, viewed the matter as sufficiently serious to require a new trial. Similarly, the Ninth Circuit granted a new trial in *Chisum*. While we make no holding on this issue in this case, we do express concern regarding the handling of such possibly tainted evidence in a federal prosecution.

The judgment of the district court will be reversed, and the case remanded for a new trial.

### Appendix

THE COURT: So you promptly jumped onto the bridge and were caught, is that it?

MR. HANSEN: That is not correct, your Honor.

So I immediately told her the first thing that would have to be done would be that she would have to talk to her law-

yer and I would have to talk to him if there was anything to be done.

I attempted during Thursday and Friday to talk to Mr. Van Drunen, and he was, in fact, out of town and not available until Sunday. And I did talk to him Sunday night about the matter.

And Mrs. President has indicated she would like myself and Mr. Shreeve to represent her in regard to possible motions for a new trial, the normal types of things.

We have not had an opportunity and didn't feel it was proper for us to go into all of the details of these matters with her because she was represented, as your Honor has indicated.

This is one of the matters that I did want an opportunity, if I could have, to have discussed with you on Friday, and it was impossible to do so.

THE COURT: It is impossible for any attorney to butt in on a case where counsel of record hasn't left the representation. Now, I will never talk to anyone who comes in and tries to butt in on another man's case. And that is just exactly what you are doing.

Now, I don't know whether Mr. Van Drunen was appointed or whether he was retained. Which was it?

MR. VAN DRUNEN: I was appointed, your Honor.

THE COURT: Yes, I think under appointment of this Court. And you are trying to replace him.

MR. HANSEN: I am not trying to replace him, your Honor. I am trying to proceed in the manner the Court wishes.

THE COURT: Oh, this is just nonsense.

MR. HANSEN: And Mrs. President has said she wishes us to represent her and doesn't wish Mr. Van Drunen to, with no aspersions toward him.

THE COURT: Mrs.—whatever her name is—President, or Washington, or whatever, hasn't any choice in the matter. The Court has made this appointment. It is the Court's appointment.

Mr. Van Drunen is acting under appointment of this Court.

Now, that is the status of the affair.

MR. HANSEN: Mrs. President is present here today, your Honor, and could make comment about her desires in regard to counsel.

THE COURT: That just shows the kind of representation you would give her, to make a statement like that to this Court.

MR. HANSEN: Your Honor, this lady is going to a federal prison or the Salt Lake County Jail at ten o'clock this morning unless she has representation.

THE COURT: Oh, is that so? You know about that, do you?

MR. HANSEN: She told me that. That is why I tried so hard—

THE COURT: You are going to rapidly get yourself in the county jail now, Mr. Hansen, if you proceed to interfere with the appointment of this Court of an attorney to represent that woman.

MR. HANSEN: I am not interfering, your Honor. I am telling you what the lady has told me, and I am amenable of course, to what the Court orders and what you want to do. I am amenable to that, but this lady—

THE COURT: Mr. Van Drunen, you are standing, and I suppose you want to say something to the Court.

MR. VAN DRUNEN: Well, I was out of town from Wednesday noon until Friday afternoon.

THE COURT: Surely.

MR. VAN DRUNEN: And, as a matter of fact, I was in my office Saturday morning, and I talked to Cathy Washington and I showed her this consent and explained the alternatives to her. And she hadn't signed it at the time I left the city, but she came in the office and signed it, and my secretary brought it over here.

I am here in response to Mr. Hansen's telephone call last evening as a courtesy to him. He said he had been retained by Cathy Washington for the purposes of reviewing the possibility of an appeal.

Now, I have stood in this court a great many times and represented clients, for which I didn't get a dime and which cost me a great deal of money, before the present Act went into effect, and I am certainly in favor of the law that says an attorney will receive some remuneration for his services; but, on the other hand, I think that, when you represent to this court that you are impecunious and then you find yourself in a position to pay $500 to a lawyer ten days later—

THE COURT: Did she pay him $500?

MR. VAN DRUNEN: That is what he said.

THE COURT: Did she pay you $500?

MR. HANSEN: She has given me $500. It is in a trust account, and it is available for return to her, your Honor.

I think I should have an opportunity to explain this whole matter to you, and I think that the aspersions that are being made toward me are unfair. I feel that I have a perfectly adequate explanation, and I have proceeded in a very ethical manner in this matter. I attempt to do that always in these cases. I don't want to do anything wrong, and I won't do anything wrong.

THE COURT: You acted improperly last Friday afternoon, persisting in phoning my secretary to try to get through to me.

MR. HANSEN: It was on behalf of this lady.

THE COURT: It doesn't make any difference. You weren't her attorney. You are not her attorney now.

MR. HANSEN: Your Honor, Mr. Van Drunen had the opportunity to step forward with courtesy and make statements to you. I would like to be able to say this to you and ask for what we need, or what we would like; and, if you disagree with it, and if there is impropriety in what I am saying, I know your Honor will rule on it. I have done the best I can.

THE COURT: What you had better do is bring it to a brief termination here, whatever you are going to tell me now. Go ahead.

MR. HANSEN: I request at this time that I be allowed to enter an appearance as counsel for Cathy President in regard to the matters pending before the Court.

I request additionally, your Honor, a stay of execution in regard to her sentence for a period of time that the Court will allow. I would request, your Honor, ten days to be able to discuss matters that she has mentioned to me very briefly and that I have not gone into detail with her because it would have been improper to.

THE COURT: It is improper right now.

MR. HANSEN: I don't think I have acted improperly, your Honor, in any way, and I would request that I be allowed to enter my appearance and be allowed to investigate the matters she has represented to me and to report back to the Court.

THE COURT: What you ought to do is hire yourself a lawyer.

MR. HANSEN: I don't think I need one, your Honor.

THE COURT: You ought to hire yourself a lawyer.

MR. HANSEN: I resent that, your Honor.

THE COURT: You can resent it as you please.

MR. HANSEN: I am a member of the Bar and qualified to practice law before this Court and in this State.

THE COURT: There is some question about that in my mind.

MR. HANSEN: There is none in mine, your Honor, and I resent those comments.

THE COURT: Oh, yes, nothing in your mind about it at all. This woman has sworn that she is impecunious, has no money to pay for a lawyer and no means of obtaining any, and on that basis an attorney was appointed for her. Now, you are getting her into a fine shape here. She swore under oath.

Now, Mr. Hansen, you are just about to get your client to be or not to be in difficulty with the law for perjury.

MR. HANSEN: I don't agree with your analysis, your Honor.

THE COURT: You don't agree with anything.

MR. HANSEN: For certain reasons.

THE COURT: Because you need a lawyer.

MR. HANSEN: Your Honor, I know that the laws on indigency require that she not—

THE COURT: It has nothing to do with the law of indigency.

MR. HANSEN: May I make further comment about how the money was obtained, from the best that I understand it?

THE COURT: You had better make it brief.

MR. HANSEN: Mrs. President did not have money available, at least she tells me, and it is my understanding from her that she was in an indigent capacity and still is, but she has gone to friends and relatives and borrowed the money that she has given to me and that it is not money that was available from any assets of hers at all. And I would request the Court to give me an opportunity to discuss the matter with her fully, to investigate it and come back and report to the Court. I would like to enter my appearance and have a stay of execution of ten days for this purpose. And I say these things in all good respect and in all honesty, and I have not acted in any way improper in regard to this matter whatsoever.

I feel that the woman, your Honor, is entitled to have counsel. Mr. Van Drunen—I don't wish to speak for him, but it is my understanding he does not wish to pursue the appeal, he does not wish to file a motion for a new trial, and so forth, in regard to these matters. I am not certain that I do, but I do feel that it is proper for this woman, when she was not able to contact him when she wanted to, to have an opportunity to have me look at these matters, and this is what she has requested.

THE COURT: I am going to have you investigated by a disciplinary committee of the Utah State Bar Association and, when we find out what that report is—and then I am going to have you investigated in connection with this matter before I make any ruling on it in any way, and that investigation will go forward this morning. In the meantime, Mr. Van Drunen is a court-appointed attorney for her, and I will direct Mr. Van Drunen to talk with her as her attorney.

Now, that is the status of that matter this morning, and I am not going to rule on it, and your appearance may not be entered at this time.

All right, we will proceed with the business of the Court this morning.

MR. HANSEN: Your Honor, in view of your comments just now, I don't feel the Court has confidence in me sufficiently to represent the client that is to stand trial today, and I request at this time for a change of venue on these matters.

THE COURT: That is denied. That is denied. Bring in the jury.

MR. HANSEN: Your Honor, I will not be able to proceed in this matter at this time in view of your aspersions regarding my character.

THE COURT: What would be a very good thing would be for you to retire from a representation of those people. If you are talking about a change of venue, you are not going to get it. If you want to withdraw as counsel, I will permit you to do so.

MR. SHREEVE: Your Honor, if I could make a statement on that, as co-counsel in this matter, the division of the responsibility in preparation of this trial is such that, if Mr. Hansen is unable to proceed or requested by the Court to withdraw, main counsel is not prepared to go ahead. I feel that the Court might consider, because of the circumstances that have arisen throughout the hearing in this thing, that it might be in the interest of justice that a change of venue within the district be granted.

THE COURT: Well, that is very nice that you have that feeling. If you folks want to represent these people, you just may do so, but we are going to proceed right now. If you don't want to represent them, just say so.

MR. SHREEVE: Your Honor, I find it very difficult to answer a question like that when you have indicated you are going to investigate immediately co-counsel and, indirectly, myself.

THE COURT: In connection with the Cathy Washington matter.

MR. SHREEVE: And that my co-counsel needs an attorney, rather than that he is one.

THE COURT: Well, I think it is perfectly obvious. Here he has Cathy Washington in a situation now where she may be charged with perjury.

MR. SHREEVE: Your Honor, I think it is difficult for an attorney to proceed if the attitude of the Court is to demean him so that he cannot have any standing before witnesses or prosecution. I think that is what has happened throughout this hearing.

I have been told I have been receiving a law lecture, that I am rude. I find it difficult to know when I can speak because of the possibility that your Honor, with all due respect, is thinking of the matter before continuing, and I apologize for any misstep I may have made.

I think that matters have come to the point that perhaps justice would not be served if it becomes a continual thing between defense and the Court, and I don't think—

THE COURT: You fellows have been trying to put the Court in a hole since you started here. Now, I will say this for you: It gets pretty bad when you interrupt a trial—we have seventy-five or a hundred jurors here to try this lawsuit this morning, and Mr. Hansen interrupts this proceeding to butt in on the representation of a woman here who swore that she was an indigent, swore that she had no means of hiring a lawyer, and now she has produced $500 for Mr. Hansen, which he has accepted. And he has done this behind the back of the attorney the Court appointed. Now, he brings all this matter up here this morning to further muddy the waters in this proceeding, insists on making a speech to me about it while we are keeping the jury waiting outside.

If that kind of conduct isn't reprehensible, I don't know what is.

MR. HANSEN: You have misrepresented what happened on the record now, and that is not true. I made every effort to contact Mr. Van Drunen, and his secretary will verify that, in his office.