UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry Houston STONE, Defendant-Appellant.

No. 71–2937.

United States Court of Appeals,
Fifth Circuit.

March 26, 1973.

Frank K. Martin, Columbus, Ga., for defendant-appellant.

William J. Schloth, U. S. Atty., Charles T. Erion, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and BELL and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

On July 28, 1971, a federal grand jury returned a six count indictment against the appellant, Jerry Houston Stone. Stone was charged under Count One with kidnapping coupled with infliction of bodily injury under Title 18, U.S. Code, Section 13,[1] in accordance with Georgia Code Ann. Section 26–1311, under Count Two with assault with a dangerous weapon, Title 18, U.S.Code, Section 113(c); under Count Three with assault with intent to rape, Title 18, U.S.Code, Section 113(a); under Count Four with disabling and maiming, Title 18, U.S.Code, Section 114; under Count Five with aggravated sodomy, Title 18, U.S.Code, Section 13, in accordance with Georgia Code Ann. Section 26–2002; and under Count Six with rape, Title 18, U.S.Code, Section 2031. A jury found Stone guilty under all six counts on September 15, 1971. He was sentenced to confinement for life under Counts One, Five and Six, five years un-

1. Title 18, U.S.C., Section 13, provides for the adoption of state law for areas within exclusive or concurrent federal jurisdiction: "Whoever . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession or District in which such place is situated" (the federal enclave) "by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

der Count Two, twenty years under Count Three, and seven years under Count Four, all sentences to be served concurrently. After careful consideration of the grounds urged for reversal of the judgment below, we affirm.

## I. THE EVIDENCE

Mrs. Jane Doe (a fictitious name) was, at all material times, a resident of Columbus, Georgia. Lt. Doe, Mrs. Doe's husband, was stationed at nearby Fort Benning for attendance at a U. S. Army's Officer Candidate School conducted on that post. After he completed his prescribed course Lt. Doe remained on duty at Fort Benning awaiting further assignment. In September of 1970 he left under orders for South Vietnam.

During her husband's Fort Benning tour of duty Mrs. Doe taught elementary school in Columbus. She continued teaching after his departure. In December of 1970 she also began teaching an adult education class on Tuesday and Thursday evenings.

Just before 10 P.M. Thursday April 29, 1971, Mrs. Doe returned alone to her rented home in Columbus from teaching her evening class. Upon entering her house she went immediately to the back door. She flipped on an outside light to look for her pet cat. The cat was dead in the backyard. Mrs. Doe testified she then "sort of went into shock". She telephoned two fellow teachers, one of whom agreed to take her to get some tranquilizers. She went to her front door to wait for her friend. She looked to her right as she reached the door and suddenly saw a man rushing at her from that part of the house. He was wearing her blue panty hose on his head. Mrs. Doe screamed, and the man struck her on the head. The assailant grabbed her hair and dragged her into the hallway. He produced a knife which he held at her throat and threatened to kill her if she failed to do as he said. He then hit her in the eye, dislodging a contact lens to the upper part of her eye and took her into her bedroom where she was ordered to disrobe. She complied. The assailant threw her to the bed. At this point some one or more persons outside yelled and pounded on the front door. A voice called to ask if she was all right. The man directed her, with his knife at her throat, to tell those outside she was okay, that she just had a bad dream. She did so and the persons outside left.

After checking to see if anyone was around, the man ordered Mrs. Doe into a top and slacks, then grabbed her by the hair and dragged her out of the house, out the backyard and over a fence into a neighbor's yard. When neighborhood dogs began barking he dragged her to the road, and eventually into his car. Mrs. Doe attempted to get out through the car door but her attacker grabbed her and slit her wrist with his knife. He then drove rapidly to Fort Benning.

The man drove to one of the more remote ranges at Fort Benning, located on a deserted side road. He stopped the car and told Mrs. Doe to remove her clothes. According to Mrs. Doe's testimony, the man then proceeded to rape her several times, committed sodomy upon her several times, and forced her to perform fellatio upon him several times. These events, occurring over a number of hours, took place both in and out of the car. Other indignities were inflicted on Mrs. Doe. The man chopped off some of her hair, cut off part of her pubic hair, hit her several times, kicked her, and whipped her with a tree branch. He tied her up with pieces of her panty hose that he had been wearing earlier, gagged her, and burned her repeatedly with the car's cigarette lighter and a lighted cigarette.

During this ordeal Mrs. Doe had occasion to see and memorize the car's license tag number, to notice a red Fort Benning sticker tag on the front bumper of the car and that the car was a Chevrolet Camaro. She saw an airborne insignia sticker or decal on the windshield which she tried to peel off. She noted that her assailant was wearing raw-hide colored ankle-high boots and a gold colored sweat shirt. At one point, when

the man appeared to doze from his exertions, Mrs. Doe tried to escape from the car. When she opened the car door, the overhead light came on, awakening her abductor. Mrs. Doe for the only time during the evening had an opportunity to see her assailant's features, getting a clear look at him for about 15 seconds before he grabbed her and pulled her back into the car to resume his sexual attacks.

Mrs. Doe's assailant finally stopped his abuse of her some time in the early hours of Friday morning, April 30. He told her he had served with the Army in Vietnam, had recently been released at Fort Campbell. He also said he had two children. Mrs. Doe begged him not to kill her. At length he agreed to take her elsewhere and release her. After they both dressed, he drove her off the Fort Benning base to a busy highway and released her. Mrs. Doe ran to a filling station and called the police. She was taken by ambulance to Martin Army Hospital, and there was treated for her wounds and discharged.

Acting upon information supplied by Mrs. Doe, FBI special agents quickly discovered the ownership of the Chevrolet Camaro used by the assailant. The car was owned by the defendant Stone, an airborne infantry instructor at Fort Benning. The agents arrested Stone in his car at his home. After his arrest and pursuant to a search warrant, the special agents searched Stone's car. They discovered clothing similar to that described by Mrs. Doe in Stone's home.

Stone later signed a written waiver of his constitutional rights under *Miranda* and then signed a confession admitting the attack on Mrs. Doe. At arraignment, Stone's plea was not guilty.

After the grand jury indictment, and prior to trial, a Title 18 U.S.C., Section 4244 hearing was held to determine Stone's competency to stand trial. Stone was examined by Dr. Raines, a psychiatrist, and Dr. Mandeville, a clinical psychologist, both of whom testified at the hearing. The trial judge found Stone competent to stand trial.

At the trial, in addition to questioning the sufficiency of proof of the offenses shown by the government's testimony, Stone defended on the basis of temporary insanity at the time of the events in question. Drs. Raines and Mandeville again testified, the former for the prosecution, Dr. Mandeville for the defense. A number of Stone's fellow soldiers testified to various irrational acts of Stone while he had been in Vietnam. Members of his family also testified to irrational behavior after his return from overseas. He did not take the stand. As stated the jury returned a guilty verdict as to all six counts of the indictment. Judgment of guilty and sentencing ensued, followed by this appeal.

## II. ISSUES ON APPEAL

The appellant raises ten separate issues on appeal. A number are clearly without merit and may be disposed of rather summarily; but some of the contentions merit serious evaluation.

In brief, the appellant alleges that:

(1) the trial court erred in ruling that Stone was competent to stand trial;

(2) the jury should have found Stone not guilty by reason of insanity at the time of the offense;

(3) the trial court erred in determining that the defendant's alleged confession was voluntary;

(4) the trial court erred in not granting a mistrial when the prosecution stated to the jury, in opening argument, that the government had a confession from the defendant, prior to the court's determination that the confession was voluntary;

(5) the trial court erred in admitting into evidence Stone's alleged confession and his *Miranda* waiver, and in permitting these items to be taken to the jury room by the jury while they deliberated upon their verdict;

(6) the trial court erred in allowing into evidence the allegedly "tainted" in-court identification of the appellant by the victim;

(7) the trial court erred in admitting evidence seized under a search warrant allegedly issued in the alternative;

(8) the trial court erred in not granting a motion for acquittal on Counts Two, Three and Four of the indictment, i. e., assault with a deadly weapon, assault with intent to rape, and disabling and maiming;

(9) the trial court erred in not making an *in camera* inspection of the government's files for exculpatory and impeaching evidence; and

(10) the overall conduct of the trial judge deprived the defendant of a fair trial in that the appellant was deprived of the effective assistance of counsel by the trial judge's assistance in the prosecution of the case, by his continual demeaning of defendant's counsel, and by his constant disparaging of the defense.

Each of these issues was preserved for appellate review by appropriate motion below.

### III. DISCUSSION

We will deal with these questions in the order raised in appellant's brief and above.

■ (1) We turn first to the question of Stone's competency to stand trial and his defense of insanity at the time of the offenses. After careful study of the record, we cannot say that the trial court's determination that Stone was competent to stand trial was either "clearly erroneous," United States v. Schaffer, 5 Cir. 1970, 433 F.2d 928, or "clearly arbitrary or unwarranted," United States v. Gray, 5 Cir. 1970, 421 F.2d 316.

■ (2) Nor can we say, taking the evidence presented at trial in the light most favorable to the government, Glasser v. United States, 1944, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 860, that the jury lacked evidence to conclude that Stone did not meet the test of legal insanity adopted by us en banc in Blake v. United States, 5 Cir. 1969, 407 F.2d 908.[2]

■ (3) Since whether a defendant's confession was voluntary is to be tested upon a civil burden of proof, Lego v. Twomey, 1972, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618, we cannot say that the trial court's finding of voluntariness was clearly erroneous. Rule 52, F.R. Civ.P.

(4) and (5) The appellant makes two additional points regarding the appellant's confession. The first is that the prosecuting attorney improperly alluded to the confession in his opening statement. The second point made is that the written confession and the signed *Miranda* waiver should not have been delivered to the jury when it retired to consider its verdict.

We express our disapproval of the practice indulged in by the prosecution. It was improper.

---

2. An unusual situation is noted in connection with the competency and legal insanity issues. It was brought out at the pretrial competency hearing and at trial that Dr. Raines in reaching his conclusions that Stone was (1) competent to stand trial and (2) legally sane at the time of the offenses, relied in part upon a copy of the defendant's pre-sentence investigation report he had been allowed to study. Dr. Raines' possession of the pre-sentence report was in clear violation of Rule 32(c)(1), F.R.Cr.P., which provides that ". . . [t]he report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty."

In another case we might consider adoption of a *per se* rule regarding use of a confidential pre-sentence report in contravention of Rule 32. Certainly, forbidden use of the report obviously may seriously prejudice a defendant's rights. But here we are without knowledge as to whether use of the report helped or hurt Stone. Its use was not objected to nor was the doctor's statement that he had considered it. Use of the report is not assigned as error and it is not a part of the appeal record, although it was made available to defense counsel during his cross-examination of the doctor at the competency hearing. We conclude that in this context the use of the report was harmless error. We note what occurred in order to make plain that it should not have occurred, for the benefit of the trial bench and bar of this circuit.

■ In his opening statement, prior to any court determination of admissibility, government counsel informed the jury that the defendant had made a confession which the government would introduce in evidence. Defense counsel's motion for mistrial at this point was denied and overruled. The trial judge by this denial chose the better—but not an entirely satisfactory—way out of the dilemma in which he was placed by the U. S. Attorney's statement. He preserved the right to declare a mistrial, based on the unfortunate statement, in the event the United States either, (1) failed to demonstrate voluntariness and consequent admissibility of the confession by a Jackson v. Denno type inquiry during the trial, or (2) did not offer the confession. But, if the confession was at the appropriate time later found admissible —as actually occurred—it would conceivably receive added emphasis from counsel's remarks in his opening statement.[3] In the course of a several days trial, we find that such added emphasis was so slight as to be negligible. Once the confession was found to be voluntarily made and received in evidence the effect of the prosecutor's breach of propriety was dissipated.

■ It is also urged that special and undue import was given to the written confession when it, with the signed *Miranda* rights waiver went to the jury room when the jury retired to consider its verdict. Whether documents or other evidentiary exhibits properly admitted should or should not accompany the jury to the jury room is a discretionary matter for the trial court. Downing v. United States, 5 Cir. 1965, 348 F.2d 594, cert. den. 1965, 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155; Dallago v. United States, 1969, 138 U.S.App.D.C. 276, 427 F.2d 546. We find no abuse of that discretion here despite the appellant's earnest argument to the contrary.

■ (6) Mrs. Doe's in-court identification of Stone was not impermissibly "tainted" by the photographic spread shown to her prior to trial. Defense counsel was allowed at trial to inspect the photographic spread used to refresh Mrs. Doe's memory the day before trial, and did not object after examining them, that they were impermissibly suggestive. In addition, it is clear from the transcript of Mrs. Doe's testimony that she identified Stone from her own clear memory of the event. In fact, the testimony reveals that she had a remarkably clear and precise memory of the entire evening of April 29, 1971. We find no error here. Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; United States v. Ervin, 5 Cir. 1971, 436 F.2d 1331; United States v. Sutherland, 5 Cir. 1970, 428 F. 2d 1152. Nor do we feel that the absence of the defendant and his counsel at the time Mrs. Doe perused the photographic spread was error. As we said in *Ervin*, supra:

> "We are not willing to expand on *Simmons* by holding that counsel for defendant has a right to be present when counsel for the Government holds pretrial conferences with his prospective witnesses if he shows them such a photograph, especially in a case such as the one at bar where it is clear that the in-court identifications of the defendant had a completely independent source from the res gestae photograph exhibited to these witnesses at such conference." (436 F.2d at page 1334)

■ (7) The appellant's claim that the search was invalid is without merit. A close reading of the warrant reveals that it was *not* issued in the alternative,

---

3. The appellant urged on brief and in oral argument that the trial judge's later determination of admissibility was necessarily influenced by improperly weighing as a factor in his decision the realization that only a holding of admissibility would insulate his prior denial of mistrial motion from error. In a word, the judge was constrained to vindicate his prior judgment. This proposition is of such gossamer weight that we disregard it.

as the appellant claims, but in the *conjunctive*, for 'both Stone's home and his car. The arresting officers followed him to his home and served the search warrant as well as an arrest warrant on May 2. Even if the search warrant were held invalid, there is an independent ground for sustaining the legality of the search of the car; it was incident to Stone's arrest, the legality of which is not attacked. Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419.

The search of the car was unproductive except for fingerprint lifts and samples of hair which were matched to that of the victim.[4]

The search of the house produced a pair of cowboy boots and a gold colored short-sleeved sweat shirt identified by Mrs. Doe as similar to articles worn by her attacker.

(8) The appellant next urges that he was further prejudiced when the trial court allowed the jury to consider all six counts of the indictment against him. Stone asserts that Count Three's charge of assault with intent to commit rape, is a lesser included offense within the crime of rape charged in Count Six, and should not have been presented to the jury as a separate crime. He also urges that Count Two which charged assault with a dangerous weapon, is a lesser offense within the charge of maiming and disabling under Count Four.

 Appellant is correct when he asserts that a charge of assault with intent to rape is included in a charge of rape. The government apparently concedes this point in its brief on appeal. Appellee's Brief, p. 26. We do not consider whether assault with a dangerous weapon is a lesser included offense within the charge of disabling and maiming, since we conclude that the latter charge (Count Four) should not properly have

been submitted to the jury at all. Title 18 U.S.C., Section 114, defines the offense of disabling and maiming:

"Whoever . . . with intent to maim or disfigure, cuts, bites, or slits the *nose, ear* or *lip,* or cuts out or disables the *tongue,* or puts out or destroys an eye, or *cuts off or disables a limb or any member* of another person; or

Whoever . . . with like intent, throws or pours upon another person, any scalding water, corrosive acid or caustic substance

Shall be fined not more than $1,000 or imprisoned not more than seven years or both." (Emphasis added)

Only rarely has this section received interpretation by the courts. See e. g., United States v. Scroggins, C.C.Ark. 1847, Fed.Case No. 16,243. But taking the plain meaning of the language of the statute we hold that the facts here fail to support a charge under it. Evidence was introduced at trial that Mrs. Doe's assailant cut off part of the hair on her head and her pubic hair, hit and kicked her, whipped her with a branch, cut her wrist with a knife, and burned her with his lighted cigarette and the car's cigarette lighter. No evidence was introduced regarding damage to Mrs. Doe's nose, ears, lips, tongue, or eyes, or that her assailant threw or poured damaging substance upon her. Nor does the language "cuts off or disables a limb or any member" cover the physical abuse Mrs. Doe suffered here. We conclude that this charge should not have been submitted to the jury.

 In summary the trial court erred when the jury was permitted to consider Count Three charging assault with intent to commit rape, and Count Four, charging maiming and disabling, and further erred when sentence was imposed after conviction for these two

---

4. A large quantity of Mrs. Doe's hair, (which the discoverer, an army sergeant, first thought to be a wig), a pair of Lt. Doe's gloves identified by Mrs. Doe as taken from her home and worn by her assailant, her blue panty hose used to disguise the attacker's features, and a pair of men's briefs, or jockey shorts, were all found at the remote scene of Mrs. Doe's night of terror. The discovery of these objects occurred May 3, the morning following Stone's arrest.

offenses. But since the sentences imposed thereunder were made concurrent to the three concurrent valid life sentences imposed for kidnapping under Count One, aggravated sodomy under Count Five and Rape under Count Six, the error with respect to Counts Three and Four is harmless under the concurrent sentence doctrine.[5] Roviaro v. United States, 1956, 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639; Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S. Ct. 1375, 87 L.Ed. 1774; United States v. Payne, 5 Cir. 1972, 467 F.2d 828; United States v. Vigo, 5 Cir. 1970, 435 F.2d 1347.

■■■■ (9) Error is not demonstrated in the trial court's refusal to make an *in camera* inspection of the government's files at the appellant's request. It is apparent from the record that defense counsel asked for the *in camera* inspection solely to discover whether the government had any evidence regarding Mrs. Doe's claimed infidelity while her husband was in Vietnam. Defense counsel requested the information on the basis that it was needed to impeach the trial testimony of the victim, the government's principal witness. The trial court ruled that even if the government files contained such evidence, which government counsel consistently denied, the information would be irrelevant and could not be used for impeachment. We agree.

■■■■ It is unclear from the transcript or from the briefs on appeal whether the defendant's motion for an *in camera* inspection of the government's files was made pursuant to Rule 16, F.R.Cr.P., or under the Jencks Act, Title 18, U.S.Code, Section 3500. The granting of a Rule 16 discovery motion is a matter for the sound discretion of the trial court, reviewable only for an abuse of that discretion. See, United States v. Jordan, 2 Cir. 1968, 399 F.2d

610; Clay v. United States, 5 Cir. 1968, 397 F.2d 901. We do not find such abuse here. Assuming a Jencks Act motion, the information requested here does not come under the definition of a "statement," Title 18 U.S.Code Section 3500(e), the threshold requirement for relief under Section 3500. Assuming that the government had such statements as the defense requested here, and even if these statements were of a nature requiring production under the Jencks Act, they could not have been used for any legitimate evidentiary purpose. Production of "statements" under Section 3500 and their admissibility as evidence are separate questions. See, Campbell v. United States, 1963, 373 U. S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501. Here, the trial court correctly ruled that such "statements" would be inadmissible assuming that they existed. Neither Mrs. Doe's marital fidelity nor the lack thereof had evidentiary bearing upon the issues raised by the charges against Stone. Attempted impeachment of Mrs. Doe by proof of infidelity would have been impermissible as being upon a collateral issue. United States v. Williamson, 5 Cir. 1970, 424 F.2d 353, 356; Byrd v. United States, 5 Cir. 1963, 314 F.2d 336, 337, 3 Wigmore, Evidence, Sec. 1003 (3d Ed. 1940).

■■■■ (10) This brings us to the last issue presented by this appeal: alleged overactivity in the conduct of the trial by the district judge and the further claim that by demeaning appellant's counsel and disparaging his defense the judge deprived appellant of the effective assistance of counsel. The appellant refers us to numerous portions of the trial transcript which he urges demonstrate that the trial court took an overactive part in the trial to his prejudice before the jury. After some deliberation, we have decided because of space considerations not to reproduce representative

---

5. Benton v. Maryland, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 did not alter the concurrent sentence doctrine, but simply held that there is no constitutional bar to consideration of challenges to multiple sentences even though concurrent sentences are imposed.

portions of the transcript in this opinion or an appendix thereto. This would add unwarranted length with no particular precedential benefit to the bench or bar. None of the situations under review approached the danger line established under principles enunciated by us in a long list of cases.[6] We conclude that the trial judge did not participate in the trial to the extent that the appellant's right to a fair and impartial trial was in any way prejudiced before the jury. We further conclude that Stone was not deprived of the effective assistance of counsel. To the contrary, his counsel was vigorous and effective in presenting his views to the trial court. In the main, the instances in the record when the trial judge may have seemed severe in the admonishment of counsel occurred precisely because of counsel's persistence in alluding before the jury to matters previously clearly excluded by the trial judge. Counsel for the defendant stubbornly persisted in the face of adverse rulings in an effort to try the victim rather than the defendant, a favorite device in the defense of a charge of rape. This strategy was especially inappropriate in this trial for abduction of and assault upon an utter stranger. Counsel occasionally brought upon himself stern admonitory remarks when he continued to try the court's patience in this respect.

But the strong overall impression of the trial judge's demeanor that we gain from close examination of the record is one of patience, courtesy and impartiality, both in dealing with counsel and in the conduct of the trial generally. Because judges are human and because trials involving details of particularly revolting behavior as here are peculiarly apt to disturb judicial composure, we

have closely scrutinized this record in this respect. We determine that the trial judge comported himself calmly and with commendable neutrality. He was firm but we fail to find that he was unfair in any respect to defendant or his counsel.

### IV. CONCLUSION

We conclude that Jerry Houston Stone's trial was free from prejudicial error and that his conviction must stand.

Affirmed.

---

6. Including the following cases: United States v. Womack, 5 Cir. 1972, 454 F.2d 1337; United States v. Musgrave, 5 Cir. 1971, 444 F.2d 755; United States v. Lanham, 5 Cir. 1969, 416 F.2d 1140; United States v. Reed, 5 Cir. 1969, 414 F.2d 435 (dissenting opinion, op. cit. 440, adopted by the Court en banc, 5 Cir. 1969, 421 F.2d 190); Bursten v. United States, 5 Cir. 1968, 395 F.2d 976; Blum-berg v. United States, 5 Cir. 1955, 222 F.2d 496; Zebouni v. United States, 5 Cir. 1955, 226 F.2d 826; Gomila v. United States, 5 Cir. 1944, 146 F.2d 372; Hunter v. United States, 5 Cir. 1932, 62 F.2d 217; Adler v. United States, 5 Cir. 1910, 182 F. 464; see further United States v. Workman, 9 Cir. 1972, 454 F.2d 1124; United States v. Davis, 10 Cir. 1971, 442 F.2d 72.