**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Meliton GARZA, Jr., and Rogelio Torres, Defendants-Appellants.**

No. 77-5244.

United States Court of Appeals, Fifth Circuit.

June 5, 1978.

Rehearing Denied July 12, 1978.

Dick DeGuerin, Houston, Tex., for Garza.

John J. Pichinson, Corpus Christi, Tex., for Torres.

J. A. Canales, U. S. Atty., Mary L. Sinderson, John Potter, George A. Kelt, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before SKELTON,* Senior Judge, FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge:

The defendants in the above-styled case were convicted of conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a), 963, and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The defendant Garza has asserted numerous errors on appeal, and, because we have concluded that the trial court abused its discretion in refusing to submit various defense exhibits to the jury, we hereby reverse the conviction of the defendant Garza and remand for retrial. After careful review of the record, we have concluded that the conviction of the defendant Torres is due to be affirmed.

* Senior Judge of the United States Court of Claims sitting by designation.

## I. FACTS

The facts, considered in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), indicate that during early October, 1975, seven individuals met initially at an apartment in Corpus Christi, Texas, where the seeds of a conspiracy to import marijuana were planted. Those persons present included Duane Egli, Olvido Ortiz, Fred Brulloths, Ramsey Muniz, Robert Muniz, and the defendants in the case at bar, Meliton Garza and Rogelio Torres. Torres was introduced as the bodyguard of Ramsey Muniz, and, although he remained in hearing range during the course of the discussion, he actually participated little, if at all, in the discussion. The participants in the discussion agreed that marijuana would be imported by airplane from Mexico into the United States. Brulloths explained that he had a "connection" in Ixtepec, Oaxaca, Mexico, who would furnish the marijuana. A subsequent meeting at the Corpus Christi apartment transpired on October 10, 1975, between Ortiz, Ramsey Muniz, Brulloths, Marcelo Gonzales,[1] and the defendants in the case at bar, Garza and Torres. The discussion once again concerned importation of marijuana and it was agreed that Ortiz, Egli, and the defendant Torres would travel to Mexico by automobile in order to inspect potential landing strips. They rendezvoused with Gonzales in Mexico and then proceeded on the landing strip inspection. Ortiz, Egli, and Torres subsequently traveled to Mexico again in order to meet Gonzales and inspect a landing strip near Monterrey.

Several other meetings took place between Egli, Ortiz, Brulloths, Ramsey Muniz, and the defendants Garza and Torres subsequent to the return from the second trip to Mexico. The marijuana importation scheme was discussed at all such meetings and it was finally agreed that Road 7050 near Freer, Texas, would be a suitable landing place upon return from Mexico with the marijuana haul. Although present at many

1. Gonzales was the so-called "Mexican Connection."

of such meetings, and within hearing range, the defendant Torres took little part in the discussions, if at all. On October 28, 1975, Egli, Ortiz, and the defendant Torres traveled to Freer, Texas, to inspect the isolated road which was to serve as the landing strip following the return from Mexico. The defendant Garza accompanied the pilot Egli to Mexico on December 21, 1975, where fourteen sacks of marijuana were loaded into the airplane and flown to the United States.

The case was called for jury selection on January 6, 1977. The defendants challenged the jury selection procedure on several grounds, including, *inter alia*, that a large number of the veniremen had participated in prior jury service and that the procedure of selecting jurors well in advance of trial would result in jury service by members of the selected panel between the time of selection and the commencement of trial. The defendants' motion to quash the jury panel was denied and the parties then proceeded to select the jury.

The trial commenced on February 14, 1977, and the co-conspirators Brulloths, Egli, Ortiz, and Bernard Bowen[2] testified on behalf of the government. The defendant Garza's chief defense was comprised of an all-out attack on the credibility of the witnesses. Counsel for Garza probed at length on cross-examination into the nature of the carrot held out to each witness. In its case in chief, the government introduced a letter from the United States Attorney to Brulloths' attorney detailing an agreement concerning the testimony to be given by Brulloths. The defendant Garza later introduced seven exhibits which detailed the nature of the various charges against the witnesses Brulloths and Ortiz as well as the dismissal of several of the charges. Before the jury retired to consider the evidence, the court withdrew the seven defense exhibits but permitted the letter introduced by the government to go to the jury room.

The defendant Torres premised his defense on the theory that he acted only as the bodyguard-chauffeur of Ramsey Muniz. Through cross-examination, he attempted to establish that he did not have knowledge of the conspiracy, and, in any event, failed to participate therein.

The defendants were found guilty of both counts charged in the indictment. The defendant Garza was sentenced to consecutive five year terms of imprisonment and Torres was sentenced to concurrent three year terms.

## II. MERITS

### A. The Defendant Garza

Garza contends that the trial court committed reversible error in refusing to submit his first seven exhibits to the jury for consideration during the course of deliberations. As we have mentioned above, during its case in chief the government introduced a letter dated June 2, 1976, from the United States Attorney to Mr. Anthony Friloux, attorney for Fred Brulloths, detailing the agreement between Brulloths and the government concerning his expected cooperation. Briefly stated, the letter provides that in exchange for Brulloths' guilty plea in a pending cocaine case and his testimony in various other cases, the government will not file charges based upon any information elicited from him, will advise Judge Cox of the extent of his cooperation, and will dismiss two pending heroin indictments. The defendant later introduced seven exhibits to detail the offenses charged against Brulloths and Ortiz which were dismissed and to show that the letter did not accurately state the entire range of benefits to be received by Brulloths.[3]

2. Bowen had a possessory interest in the landing strip near Freer, Texas, where the airplane landed upon return from Mexico.

3. The exhibits are summarized as follows:
 Exhibits 1 and 2:
 Certified copies of two heroin conspiracy indictments against Brulloths.

 Exhibits 3 and 4:
 Government motions to dismiss the heroin conspiracy indictments.
 Exhibit 5:
 Copy of marijuana conspiracy indictment against Brulloths, including the judgment of conviction therein, and an agreed reduc-

Upon discovery that these exhibits were not to be submitted to the jury, counsel for the defendant Garza timely objected. Counsel pointed out that he was relying upon the exhibits to detail precisely what Brulloths had worked his way out of. The court replied that there was ample testimony in the record referring to the charges against Brulloths and Ortiz, that the defendant could base his closing argument upon such testimony, and that the exhibits were merely cumulative. The defendant's motion to reopen his case was then denied.

It is the law of this Circuit that the trial court retains discretion to determine whether properly admitted evidentiary exhibits should accompany the jury into the jury room. *United States v. Zepeda-Santana*, 569 F.2d 1386 (5th Cir. 1978); *United States v. Stone*, 472 F.2d 909, 914 (5th Cir. 1973). Our inquiry, therefore, is limited to the question of whether, under the facts and circumstances of this case, refusal to submit the exhibits constituted an abuse of discretion.

At the outset, we note that our thorough review of the record reveals that the subject matter of defendant Garza's exhibits one through seven was the subject of inquiry during cross-examination of the government witnesses. At first blush, it would therefore appear that the decision of the trial court to withhold the defense exhibits from the jury deliberations did not constitute an abuse of discretion. We wish to emphasize that if Government's Exhibit Number 1, the letter from the government to Brulloths' attorney purportedly detailing

Brulloths' agreement, had also been withheld from the jury deliberations, we would undoubtedly conclude that the action of the trial court did not constitute an abuse of discretion. The decision of the trial court to submit only the government exhibit, however, is the crucial factor in arriving at the decision which we must necessarily reach.

The government exhibit-letter succinctly spelled out certain benefits which were to flow to the witness Brulloths. Information supplied by Brulloths would not give rise to subsequent indictments against him. Judge Cox would be advised of the extent of his cooperation. Finally, the heroin conspiracy indictments would be dismissed. The letter makes absolutely no mention, however, of the fact that by order dated September 1, 1976, Brulloths' appeal bond in a prior marijuana conspiracy case had been reduced from $350,000 to $20,000, five per cent deposit required. The order, on its face, reveals that the government agreed to the bond reduction. We feel that the reduction in bond, which permitted Brulloths to gain immediate freedom after months of incarceration, and to retain his liberty for a significant period thereafter, was an important factor bearing upon the motive and credibility of Brulloths and should not have been selectively withheld from jury consideration in documentary form. Submission of the government exhibit only was tantamount to suggesting that the letter contained the entire agreement between the government and Brulloths [4] and that the cross-examination of Brulloths concerning

tion of the appeal bond from $350,000 to $20,000, five per cent deposit required. Exhibit 6:
Copy of marijuana conspiracy indictment against Ortiz, including judgment of conviction and sentence, showing that the original six year sentence was reduced to three years. Exhibit 7:
Copy of cocaine conspiracy indictment against Brulloths and Ortiz, and government motion to dismiss as to Ortiz.

4. The record reveals that the agreement letter concerning the benefits to flow in exchange for

the guilty plea in the cocaine conspiracy case and the government testimony in other cases is dated June 2, 1976. Upon commencement of the trial in the instant case on February 14, 1977, Brulloths had not been sentenced in the case in which he had entered the guilty plea. On cross-examination of Brulloths, counsel for the defendant Garza elicited testimony to the effect that the deferred sentencing was also part of the consideration Brulloths was to receive for testifying for the government. Although the deferred sentencing was not specifically covered in the defendant's exhibits, submission of the government letter only, which makes no mention of deferred sentencing,

the bond reduction in the marijuana conspiracy case was frivolous. This is even more patent in light of the fact that the court abruptly cut-off the defendant's examination entirely shortly after inquiry into this area during recross examination. R. Vol. II, 131. Defendant's exhibit number five, involving the bond reduction, directly impeaches the government exhibit by showing that the letter does not accurately recite the entire agreement between Brulloths and the government. The refusal to submit the defendant's exhibit number five constituted a clear abuse of discretion.

Additionally, defendant's exhibits six and seven detailed the benefits to be received by the witness Ortiz in exchange for his testimony. The government letter deals only with Brulloths. From the record, we discern no reason why documentary evidence as to the benefits received by Brulloths should be submitted for jury consideration but such evidence relating to Ortiz should be excluded. Once again, we conclude from this record that such action had the inherent capacity to mislead the jury and therefore constituted an abuse of discretion.

For the foregoing reasons, we have concluded that the trial court abused its discretion in refusing to submit to the jury defense exhibits five, six and seven, at the very least. Accordingly, the conviction of the defendant Garza is hereby reversed and the case is remanded for retrial.[5] Our conclusion that the trial court abused its discretion in refusing to submit the defense exhibits renders it unnecessary to consider several other contentions of the defendant which are not likely to arise on retrial. We do find it necessary and expedient, however, to make certain observations concerning the jury selection procedures employed by the court below due to the likelihood of recurrence on retrial.

The defendant Garza contends that the jury selection procedure employed by the trial court operated to dilute the effective exercise of peremptory challenges and that the trial court erred in denying various challenges for cause. Specifically, he asserts that extensive prior jury service by members of the venire was prejudicial, that the voir dire was inadequate, and that the thirty-nine day delay between jury selection and commencement of the trial was likewise prejudicial. We shall briefly discuss each contention.

 It is well settled that prior jury service alone, even in the same term of court, is not a sufficient basis to support a challenge for cause. *United States v. Jefferson,* 569 F.2d 260 (5th Cir. 1978). We recognized in *Jefferson* that a juror may be successfully challenged for cause on the basis of prior jury service only if it can be shown by specific evidence that the prior service biased the juror. *United States v. Riebschlaeger,* 528 F.2d 1031, 1032–1033 (5th Cir. 1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976).[6] Voir dire in the case at bar revealed that thirty-two of the sixty-five veniremen had engaged in prior jury service. Seventeen prospective jurors had served on at least two juries and eight had served on three or more. Two members of the venire sat on at least seven prior cases, the large proportion of which involved marijuana-related offenses. Only the latter two veniremen were successfully challenged for cause.

---

would tend to further mislead the jury as to the actual benefits received by Brulloths.

**5.** The court's refusal to submit to the jury the exhibits introduced by the defendant Garza does not apply to the defendant Torres. Torres did not object to the exclusion of the exhibits at trial, and on appeal he has not addressed this issue nor has he adopted by reference the arguments of Garza. Torres has only adopted Garza's contentions concerning prior jury service, limitation of voir dire, and delay between jury selection and trial. Brief of Appellant Torres at 24. In any event, Torres' defense is premised upon insufficiency of the evidence and not the lack of credibility of the government witnesses Brulloths and Ortiz.

**6.** In *Riebschlaeger* we rejected the concept of "implied bias" arising from jury service on similar cases in the same term of court. This concept was articulated by the Tenth Circuit in *Casias v. United States,* 315 F.2d 614 (10th Cir. 1963).

Although the record adequately supports the defendant's contention that a large number of the veniremen had prior jury experience, the defendant has failed to demonstrate by specific evidence that the prior service biased the particular jurors who were unsuccessfully challenged for cause.[7] The record is devoid of any such evidence, and, under such circumstances, we simply cannot find that the trial court abused its discretion in refusing to grant the additional challenges for cause. Nor are we persuaded by the defendant's contention that he was deprived of the effective exercise of peremptory challenges because he was forced to utilize them to strike "worn out" jurors. *Riebschlaeger,* although dealing with challenges for cause, belies this contention. Because prior service does not give rise to a finding of implied bias, and because the defendant has introduced no evidence from which we can find that the trial court abused its discretion in refusing to grant the challenges for cause, utilization of a peremptory challenge to strike a juror with prior jury experience is no different than using such a challenge to strike a juror who, for example, is the wife of a policeman or who is elderly.

We have likewise concluded that the defendant's contention that the voir dire was inadequate is without merit. Briefly summarized, the crux of the defendant's complaint is that the trial court failed to adequately explore areas involving potential for prejudice to the defense. Specifically, the defendant contends that the trial court failed to adequately examine the jury panel concerning the effects of prior jury service, preconceptions concerning Ramsey

Muniz and La Raza Unida, a local political party, and preconceptions concerning the credibility of other witnesses known by the jurors. The trial court has broad discretion in its conduct of voir dire, which is, of course, " 'subject to the essential demands of fairness.' " *United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir. 1976). As we noted in *Nell,* the relevant inquiry is " 'whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present.' " 526 F.2d at 1229. We have carefully reviewed the record and have concluded that the voir dire conducted by the trial court in the case at bar was well within the ambit of inquiry mandated by *Nell.* The examination of the prospective jurors was thorough and was designed to elicit the information required for the informed exercise of peremptory challenges by counsel and for the court to rule on the issue of challenges for cause.

[5] Finally, the defendant Garza claims that the thirty-nine day delay between jury selection and trial deprived him of a fair trial by diluting the effectiveness of his exercise of peremptory challenges. The delay was indeed a "significant delay" within the meaning of *United States v. Price.*[8] The defendant failed, however, to raise the issue of lengthy delay immediately prior to the commencement of the testimony.[9] Had he done so he would have triggered the concomitant duty of the court to conduct supplemental voir dire.[10] Accordingly, should the issue arise on retrial, objection must be made or renewed immediately prior to the commencement of the trial in

7. *We expressly reject the government's contention that the defendant has failed to properly preserve the issue of prior service for appellate review because of failure to comply with the requirements of 28 U.S.C. § 1867. We have recently had occasion to address this specific issue in the consolidated opinions of United States v. Price and United States v. Mireles, Nos. 77–5368, 77–5388, 573 F.2d 356, slip opinion 4328. For present purposes, we note that "if the Riebschlaeger standard is met a challenge based upon prior service may be maintained during voir dire as a challenge for cause, and is not conditioned upon compliance with*

28 U.S.C. § 1867(a) and (d)." (Footnote omitted). *Price* at p. 361.

8. No. 77–5368, at 364 slip Opinion at p. 4336.

9. The record reveals that the only matter brought to the court's attention immediately prior to trial on February 14, 1977, was the need for a cautionary jury instruction as to the admissibility against the defendant Garza of statements made by the coconspirators during the course of the conspiracy.

10. *United States v. Price,* No. 77–5368, at 363.

order to avoid a waiver. *See United States v. Eldridge,* 569 F.2d 319 (5th Cir. 1978).

## B. The Defendant Torres

█ The defendant Torres contends that the evidence adduced by the government regarding his participation in the conspiracy was insufficient to support the verdict rendered by the jury or to withstand his motions for judgment of acquittal proffered after the government rested and again at the close of all of the evidence.

█ In *United States v. Duckett,* 550 F.2d 1027, 1030 (5th Cir. 1977), we reiterated the rule of this Circuit that a guilty verdict may be affirmed only if, when considered in the light most favorable to the government, "reasonable minds could have found the evidence to be inconsistent with the hypothesis of the accused's innocence." We further recognized that whether the proof is direct or circumstantial, in a conspiracy case the evidence must establish beyond a reasonable doubt that a conspiracy existed, that the defendant had knowledge of the conspiracy, and that with such knowledge he performed some act to indicate his participation therein. We have concluded that the government has met the burden imposed upon it, and, accordingly, find that the conviction of the defendant is supported by sufficient evidence.[11]

At the outset, we note that the defendant Torres does not dispute that a conspiracy to import marijuana in fact existed among other individuals named in the indictment. Torres takes the position that he simply was not a member of the conspiracy, but acted only as a bodyguard and chauffeur to Ramsey Muniz, who unbeknownst to him, was conspiring to import a large quantity of marijuana into the United States. The testimony of the other conspirators belies this contention. Briefly summarized, the testimony reveals that Torres attended several meetings at which the conspiracy to import marijuana was openly discussed and that he remained in hearing range.[12] The testimony, however, is conflicting as to whether Torres actually participated in the discussions. The testimony also indicates that on two occasions Torres drove two of the coconspirators deep into Mexico to inspect landing strips and to meet the so-called "Mexican Connection." Duane Egli, a coconspirator, testified that Torres accompanied him and Ortiz to Mexico in order to "keep the deal honest." It is significant to note that Ramsey Muniz, the subject of Torres' bodyguard duties, did not even accompany Torres on the two trips to Mexico. Additionally, the testimony reveals that on two other occasions Torres accompanied other coconspirators to a landing strip near Freer, Texas, where the marijuana laden airplane later landed after returning from Mexico.[13] Once again, Ramsey Muniz, for whom Torres allegedly worked as an exclusive bodyguard-chauffeur, was not present.

The meetings and the various trips outlined above provide ample evidence from which reasonable minds could exclude all hypotheses of the defendant's innocence and reject his hear-no-evil, see-no-evil, speak-no-evil defense. In *United States v. Strickland,* 509 F.2d 273 (5th Cir. 1975), we observed that "As this court has said, it is the jury's duty to draw whatever permissible inferences it may from circumstantial

---

11. Our discussion concerning whether the evidence was sufficient to support the jury verdict applies with equal force to the propriety of the denials of the motions for judgment of acquittal because a similar standard is to be applied in each instance. In *United States v. James,* 510 F.2d 546, 551–552 (5th Cir. 1975), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46·L.Ed.2d 81 (1975), we noted that in ruling on a motion for judgment of acquittal, the court must determine whether, viewing the evidence in the light most favorable to the government, the jury must necessarily entertain a reasonable doubt as to the guilt of the defendant.

12. Indeed, aside from the testimony to the effect that Torres remained within hearing range, it is certainly reasonable to infer that a bodyguard will remain in close proximity to the person being guarded during the time the bodyguard is on duty.

13. The defendant Torres does not dispute that he accompanied the coconspirators on the two trips to Mexico as well as on the trips to the landing strip near Freer, Texas.

evidence that usually forms the basis for finding criminal intent, and to find a verdict founded on whatever permissible inferences the jury chooses to draw." 509 F.2d at 276. There is abundant evidence in the record from which the jury could conclude beyond a reasonable doubt that the defendant Torres had knowledge of the conspiracy and performed acts indicating his participation therein.[14] This is simply not a case like *Duckett, supra,* wherein a majority of the panel was troubled by the fact that the record was devoid of evidence to indicate Duckett's role in the conspiracy. 550 F.2d at 1031.

The defendant Torres also contends that he was deprived of a fair trial because of extensive prior jury service by members of the jury, limited voir dire, and the lengthy delay between jury selection and trial. For the reasons set out above in our discussion of the identical issues raised by the defendant Garza, the contentions of the defendant Torres are without merit. Accordingly, the conviction of the defendant Torres is hereby affirmed.

## CONCLUSION

The conviction of the defendant Garza is reversed and the case is hereby remanded for a new trial. The conviction of the defendant Torres is affirmed.

Affirmed in part; Reversed in part and remanded.

**14.** In any event, it is settled that "For purposes of appellate review, only *slight evidence* is necessary to connect a person with a conspiracy." *United States v. Nicholson,* 525 F.2d 1233, 1237 (5th Cir. 1976), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2170, 48 L.Ed.2d 795 (1976). The "slight evidence" rule is particularly applicable in a case such as the one before this Court wherein the defendant is clearly connected to the conspiring group. *United States v. Alvarez,* 548 F.2d 542 (5th Cir. 1977). As we stated in *Alvarez:*

> In such instances, given the clandestine character of such projects, slight additional evidence suffices to base an inference that one who had been shown beyond reasonable doubt to be a participant was as well a *knowing* participant.

548 F.2d at 544. Of course, our conclusion that the evidence is substantial in nature operates to satisfy the slight evidence rule *a fortiori.*

Despite the continued vitality of the slight evidence rule in this Circuit, in operation it has not gone without criticism. As we noted in *Duckett, supra:*

> Cited as a shibboleth permitting rapid disposition of challenges to the evidence in conspiracy cases, this rule has been articulated frequently. The roots of the rule show that its current version is an unfortunately abbreviated recapitulation of a sound doctrine. . . . We have previously pointed out that '[o]ur adherence to the "slight evidence" rule make us nonetheless insistent that guilt remain "individual and personal" and that the government show beyond a reasonable doubt that each and every alleged member of the conspiracy had the deliberate, knowing, specific intent to join the conspiracy.' *United States v. Morado,* 454 F.2d 167, 175 (5th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972).

550 F.2d at 1031.