UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony Nicholas CARRION, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Michael Anthony CARRION, Defendant-Appellant.

Nos. 71-2425, 71-2426.

United States Court of Appeals, Ninth Circuit.

June 29, 1972.

Michael D. Nasatir (argued), of Nasatir, Sherman & Hirsch, Beverly Hills, Cal., Carl E. Stewart, Orange, Cal., for defendants-appellants.

Jan Lawrence Handzlik, Asst. U. S. Atty. (argued), Eric A. Nobles, Darrell W. McIntyre, Asst. U. S. Attys., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and MURPHY, District Judge *

DUNIWAY, Circuit Judge:

Michael and Anthony Carrion were convicted in a jury trial of conspiring to smuggle marijuana into the United States from Mexico and to receive and conceal illegally imported marijuana, violations of 21 U.S.C. § 176a, and they appeal. We affirm.

## FACTS

The jury found that appellants conspired illegally to import large quantities of marijuana from Mexico into the United States by airplane. To aid them, appellants enlisted two comrades, Ponting and Cassidy, who testified for the prosecution. Ponting testified that Anthony telephoned him twice during the summer of 1970 and offered him a job

---

* Honorable Thomas F. Murphy, United States Senior District Judge, Sharon, Connecticut, sitting by designation.

driving a truck. In late August 1970, Ponting and Michael drove a rented truck to the Agua Dulce Air Park near Los Angeles, where they met Anthony and Cassidy and unloaded a large quantity of marijuana which the latter two had just flown in from Mexico. Several days later Michael asked Ponting to meet another shipment. Ponting drove to the same airport, met Anthony and Cassidy, and transferred the shipment from the plane to the truck. Ponting received another call from Michael several days later and again drove to the airport to meet another load, but the plane never arrived. Ponting made another run to the airport on September 11 for the same purpose, but he and Cassidy were arrested by United States Customs agents at the airport and the marijuana in the plane was seized.

Cassidy testified that Anthony induced him to fly plane loads of marijuana from Mexico to the Agua Dulce Air Park in the summer of 1970. He flew to Mexico several times before his arrest on September 11 at the airport, usually accompanied by Anthony, and brought back loads of marijuana.

A. *Anthony Carrion's appeal.*

### 1. *Search and seizure.*

■ Anthony filed a motion to suppress the marijuana seized at the airport on September 11, but the trial judge rejected Anthony's theory that a conspirator has standing to challenge a search directed against a co-conspirator when the fruits of the search are introduced against him. The trial judge was right. Alderman v. United States, 1969, 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L. Ed.2d 176; Diaz-Rosendo v. United States, 9 Cir., 1966, 357 F.2d 124, 132, cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83.

■ Anthony then asked for an evidentiary hearing under Rule 41(e), F. R.Crim.P., to show that he was in fact the object of the search. The trial judge refused the hearing because Anthony was not present at the airport

when the plane was searched and did not, in the motion to suppress or the supporting affidavit, allege either ownership or possession of the matter seized. The trial court correctly distinguished Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, which held that one charged with a crime that includes possession as an essential element does not have to allege possession in order to challenge the legality of the search. Possession is not an essential element of the crime of which Anthony was convicted.

■ Anthony argues that he alleged a possessory interest in the marijuana in essence when he requested suppression of "all items of personal property" taken from the plane. That position was properly rejected by the trial court on the ground that the term "personal property" was too vague and indefinite to be read as including an allegation of possessory interests in the marijuana. Evidentiary hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved. Cohen v. United States, 9 Cir., 1967, 378 F.2d 751, 760, 761, cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L. Ed.2d 215.

### 2. *Foundation for testimony about telephone conversations.*

■ Anthony argues that the testimony of Ponting and Cassidy concerning their various telephone conversations with a person claiming to be Anthony should have been excluded because neither witness stated that he recognized the caller's voice as that of Anthony, and therefore no proper foundation was laid for admission of the testimony. We do not agree. We decided this issue in Carbo v. United States, 9 Cir., 1963, 314 F.2d 718, 743, cert. denied, Palermo v. United States, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498. See also Noriega v. United States, 9 Cir., 1971, 437 F.2d

435, 436, cert. denied, 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 648. We find no abuse of discretion here because there is abundant circumstantial evidence to support a jury finding that the caller was Anthony.

### 3. *Limitations on scope of cross-examination.*

▆▆ Anthony claims that the trial judge improperly restricted his right to cross-examine government witnesses. Specifically, he objects to the refusal of the judge to permit inquiry into Cassidy's relationship with one Cliff Guttersrud, the person Anthony claims was responsible for the marijuana-smuggling scheme.

The rule in this circuit was recently stated in United States v. Haili, 9 Cir., 1971, 443 F.2d 1295, 1299:

"The scope of cross-examination is within the discretion of the trial court and limitation will not result in rever-

sal unless it is clear that the defendant was denied his constitutional right of confrontation. Enciso v. United States, 370 F.2d 749 (9th Cir. 1967)."

The trial judge acted within the scope of his discretion in limiting cross-examination. While the questioning was undoubtedly designed to impeach the witness, the transcript reveals that appellant's counsel began to range too far afield of the issues to be determined by the jury. One duty of the trial court is to limit cross-examination at that point to prevent defense counsel from confusing the jury with a proliferation of details on collateral matters. The judge did not deprive Anthony of his Sixth Amendment rights.

### 4. *Allegedly prejudicial behavior of the trial judge.*

During the trial the presiding judge berated and disparaged Anthony's counsel on several occasions, both in and out of the presence of the jury.[1] Anthony

---

1. The following are samples of the judge's remarks:

*Remarks to defense counsel.*

1. A government witness testified that defendant Anthony Carrion "evaded" a question asked him by the witness.
"MR. NASATIR: I object to the last comment and ask that it go out as a conclusion of the witness.
"THE COURT: Overruled. Now, counsel, I want to tell you now that I will make the rulings on your objections in this case, but I am not going to have you jump up every two minutes on flimsy objections. Now, keep that in mind."

2. "THE COURT: Do you see any necessity for the question really?
"MR. NASATIR: Yes, your Honor, to impeach the witness.
"THE COURT: Well, I don't really believe you, but I will let you do it."

3. "THE COURT: Now that was obvious to you when you asked the question, wasn't it?
"MR. NASATIR: Yes, your Honor.
"THE COURT: Then don't ask any more questions of that kind."

4. The judge questioned defense counsel as to the relevance of a particular line of cross-examination:
"MR. NASATIR: To show the relevance in front of the witness would de-

stroy my cross-examination. May we approach the bench?
"THE COURT: No you may not. Proceed. You are going to find out in due time counsel that I have had a little experience in this business myself.
"MR. NASATIR: I am well aware of that, your Honor.
"THE COURT: I am glad to hear that. Now, proceed. I don't want to hear any more. Proceed unless you want me to excuse the jury, and we will carry on. All right, proceed."

5. Defense counsel requested that a package of marijuana that had been opened in court be replaced by an unopened package before being offered into evidence.
"THE COURT: Let it be said that you never close a day without complicating something. I am glad we are not in a hospital. I can just imagine that the doctor would be put to sleep instead of the patient."

6. Defense counsel asked to make an offer of proof after the judge denied an evidentiary hearing on the motion to suppress:
"THE COURT: I see that you like to play games, don't you?
"MR. NASATIR: No, sir. I'm just trying to represent my client.

argues (1) that these remarks by the trial judge evidenced a lack of impartiality and suggested to the jury that the defense was without merit, thereby prejudicing Anthony and depriving him of a fair trial, and (2) that the comments intimidated defense counsel and prevented effective representation of Anthony.

"THE COURT: I'm getting kind of tired of hearing these games. Go ahead. At least I will try."

7. After the motion for an evidentiary hearing was denied:

"MR. NASATIR: May I make one further motion, your Honor?

"THE COURT: I'm afraid I am going to have to sit you down, and I may sit you down pretty hard. What is your other motion. You heard me order the jury in."

8. Defense counsel continued cross-examining an unindicted co-conspirator about the government's failure to prosecute him, after the prosecutor had objected to the line of questioning as irrelevant:

"THE COURT: Are you endeavoring to get yourself in contempt, counsel?

"MR. NASATIR: No, I am not, your Honor.

"THE COURT: Well, you are on the road to it. About half a dozen times I have told you to take up something else, and you come right back to the same question. Now I want to tell you something. I wouldn't test this court out the way some people in the country are testing judges out, because I will deal with you in a harsh fashion, a very harsh fashion. Now, you'd better listen to me. When I rule hereafter, don't come back with the same question; do you understand?"

*Remarks to Prosecutor.*

1. "MR. MAC INTYRE [prosecutor]: What is depicted in the picture, Government's Exhibit No. 12?

"THE COURT: Counsel, the picture speaks for itself. Anybody who can read plain English can read what's in that picture. I could read it by the time I was three and a half years old, and I hope you could.

"MR. MAC INTRYE: Would you look at Government's Exhibit No. 10, the picture of the cartons.

"THE COURT: If you are going to put these matters into evidence—but what I cannot get over to the United States Attorney's Office is that the proper way to try a case is to offer exhibits at the time they become ad-

In a jury trial the judge should exercise caution and restraint to avoid any possibility of prejudicing the defendant in the eyes of the jury by unnecessary criticism of or hostility toward defense counsel. We have carefully examined the transcript of the trial and the comments of the trial judge.[2]

missible, and if they are admissible, they may be shown to the jury, so that the jury, the poor jury, may keep up with what is going on in this case."

2. During the prosecutor's direct examination of a government witness:

"MR. NASATIR: I object. The prosecutor is leading the witness.

"THE COURT: Yes, he is. He can't help it, counsel. I don't know how you can cure him, counsel. I just don't know how it is possible. I will sustain the objection.

*Ladies and gentlemen, leading means* that the suggestive question suggests the answer, and that is not permissible in a court of law. This has been in effect for the last 350, 400 years, and I do not think counsel has found it out yet."

3. "THE COURT: . . . You know, ladies and gentlemen, I am sorry you can't see a case tried as it should be tried. It can be a real art, I mean from the standpoint of prosecution, short questions, the most marvelous things in the world, the easiest things in the world to understand—who, when, how, where, and what."

4. The prosecutor began the direct examination of a government witness; and the defense counsel objected:

"THE COURT: It is rebuttal only. I am not permitting you to open up on anything except rebuttal, and you are starting out as if it is not rebuttal.

"MR. MAC INTYRE: Well I've got to lay a foundation, your Honor.

"THE COURT: Well, this is going to be the most amazing statement you have ever made, because heretofore, you have never laid a foundation on a single witness. All right, proceed."

2. "Few claims are more difficult to resolve than the claim that the trial judge, presiding over a jury trial, has thrown his weight in favor of one side to such an extent that it cannot be said that the trial has been a fair one. Where there is any substance to such a claim the reviewing court must examine the entire record and attempt to determine whether the conduct of the trial has been such

Although the judge's remarks were unquestionably improper,[3] we cannot hold that the result of those unfortunate remarks was the creation of an atmosphere so prejudicial as to prevent Anthony from receiving his constitutionally guaranteed fair trial.

We arrive at this conclusion for several reasons. First, the judge repeatedly warned the jury that his criticisms of counsel's tactics and abilities had no bearing on the guilt or innocence of the accused and should be ignored. While cautionary instructions of this nature will not always cure the effect of a trial judge's hostile behavior toward defense counsel (*see* United States v. D'Anna, 2 Cir., 1971, 450 F.2d 1201, 1206, and Bursten v. United States, 5 Cir., 1968, 395 F.2d 976, 983), the warnings here were given carefully and often and were sufficient to overcome the prejudicial tendency that the judge's remarks undoubtedly had. Carroll v. United States, 9 Cir., 1963, 326 F.2d 72, 83.

Second, the trial judge did not confine his caustic rebukes to defense counsel; in fact, the prosecutor was treated more harshly than defense counsel, the judge even suggesting that the prosecutor did not know the most basic rules of questioning a witness or submitting evidence.[4] Given the more or less "even-handed" application of the judge's improper remarks, we think the jury was unlikely to think that the judge was biased against the defense.

Third, all the cases cited by Anthony in which convictions have been reversed on the grounds here asserted involved behavior by the trial judge which interfered more seriously with defense counsel's representation of his client or which more clearly demonstrated a bias against the accused. Compare, for example, Bursten v. United States, *supra*, and Peckham v. United States, 1953, 93 U.S.App.D.C. 136, 210 F.2d 693, 703–706, cert. denied, 350 U.S. 912, 76 S.Ct. 195, 100 L.Ed. 800.

The attitude and behavior of the trial judge here, while involving improper belittling of the prosecutor and defense attorneys, did not quite descend to the level of judicial hostility evident in the cases cited by appellant. This case is similar to those in which, although the comments of the trial judge were inappropriate, we could not say that they impaired the accused's right to a fair trial. *See e. g.,* United States v. Allen, 9 Cir. 1970, 431 F.2d 712; Duran v. United States, 9 Cir., 1969, 413 F.2d 596, cert. denied, 396 U.S. 917, 90 S.Ct. 239, 24 L. Ed.2d 195; Justice v. United States, 9 Cir., 1969, 407 F.2d 1323, cert. denied, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230; Robinson v. United States, 9 Cir., 1968, 401 F.2d 248; Carroll v. United States, 9 Cir., 1963, 326 F.2d 72; Smith v. United States, 9 Cir., 1962, 305 F.2d 197, cert. denied, Corey v. United States, 371 U.S. 890, 83 S.Ct. 189, 190, 9 L.Ed.2d 124.[5]

Neither do we believe that defense counsel was so intimidated by remarks of the trial judge that he thereby failed adequately to represent his client. On the contrary, the record reveals forceful advocacy by the appellant's attorney in spite of the judge's rebukes. Compare the situation here with that in United States v. Davis, 10 Cir., 1971, 442 F.2d 72, 74–78.

that the jurors have been impressed by the trial judge's partiality to one side to the point that this became a factor in the determination of the jury." United States v. Guglielmini, 2 Cir., 1967, 384 F.2d 602, cert. denied, 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48.

3. We agree with the Second Circuit that "Where mild admonitions to counsel did not suffice, any sterner or more forceful

directions which may have been warranted should have been given in the absence of the jury." United States v. Coke, 2 Cir., 1964, 339 F.2d 183.

4. Examples of the trial judge's comments to the prosecutor are included in footnote 1.

5. We note that all the cases cited, except *Robinson* and *Smith,* involved the same district judge who presided in this case.

B. *Michael Carrion's appeal.*

    1. *Sufficiency of the evidence.*

 Michael's challenge to the sufficiency of the evidence is without merit. In addition to substantial circumstantial evidence indicating his involvement in the conspiracy, the testimony of the two unindicted co-conspirators, Ponting and Cassidy, directly implicated him in the conspiracy.

    2. *Limitations on cross-examination.*

Although the trial judge did not interfere with the cross-examination of government witnesses by Michael's attorney, Michael argues that he can take advantage of the trial court's erroneous limitations on cross-examination by Anthony's counsel. However, we have already concluded that the actions of the trial judge in restricting questioning by Anthony's attorney was not error. This reasoning applies, *a fortiori*, to Michael.

Affirmed.