**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eustorgio PENA–GARCIA, Defendant-Appellant.**

**No. 74–1595.**

United States Court of Appeals, Ninth Circuit.

Oct. 30, 1974.

Charles M. Sevilla, Deputy, Federal Defenders, Inc. (argued), San Diego, Cal., for defendant-appellant.

Stephen V. Petix, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and BURNS, District Judge.[*]

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

Having been convicted on four counts of transporting illegally admitted aliens [8 U.S.C. § 1324(a)], defendant on this appeal argues two points: (a) the trial court erred in failing to suppress evidence taken in a roving checkpoint search 55 to 60 miles north of the Mexican border, and (b) the defendant was denied a fair trial and the effective assistance of counsel because of conduct of the trial judge. While we conclude that we must reverse and direct a new trial on appellant's second point, we direct that the mandate be stayed pending decision by the Supreme Court in United States v. Brignoni-Ponce, 499 F.2d 1109 (9th Cir. 1974) (en banc), cert. granted, —— U.S. ——, 95 S.Ct. 40, 42 L.Ed.2d 48, Oct. 15, 1974, or United States v. Guana-Sanchez, 484 F.2d 590 (7th Cir. 1973), cert. granted, 417 U.S. 967, 94 S. Ct. 3169, 41 L.Ed.2d 1138, June 17, 1974.

Two border patrol agents operated a roving checkpoint in July 1973 well north of the international border with Mexico on California highway S22. Pursuant to their practice of stopping every northbound vehicle, they followed and stopped an automobile driven by defendant. One passenger in the front seat and three others lying down in the rear were found to be Mexican citizens who were illegally within the country. Upon being arrested, the defendant indicated that he had picked up the passengers as hitchhikers. At trial he reiterated this explanation and denied having learned at the time that they were illegally admitted aliens or having agreed to accept payment in return for the ride.

The aliens supported the hitchhiker theory at trial, testifying that they had climbed a fence at the border, walked some distance, hailed a passing car, begged for a ride and promised to pay money to defendant after obtaining work. One alien witness was cross-examined about a statement given to the arresting agents, and indicated that he had not first been warned of his rights. The trial judge interrupted and continued to interrogate, cross-examine, threaten and intimidate the witness and to threaten defense counsel with contempt.[1]

---

[*] Of the District of Oregon.

[1] THE COURT:
  Did any of the agents give you such a warning either in Spanish or in English?
  THE WITNESS: In English.
  THE COURT: In English?
  THE WITNESS: No, in Spanish.

THE COURT: They did give it to you in Spanish?
  THE WITNESS: Yes.
  THE COURT: Well, why did you tell me they didn't give it to you?
  THE WITNESS: They didn't read them. to me over there but they read them over here.

The trial judge persisted. The witness corroborated his written statement except the portion which stated that he had made prior arrangements with the defendant in Mexico to pay $200 for transportation. Again, the judge interrupted cross-examination by the defense counsel.[2] He continued to cross-examine and threaten.[3] Finally, having intimidated the witness and defense counsel, the court concluded:

THE COURT: We will leave it to the jury. I have never seen such—I want to keep under control but it urks

THE COURT: No, at the station before you made the statement.
THE WITNESS: Yes, I think so.
THE COURT: Well, you admit it now?
THE WITNESS: Yes.
THE COURT: Any nobody threw you around at the station, did they?
THE WITNESS: No.
THE COURT: And nobody hit you?
MR. GOODPASTER [defense counsel]: Your Honor, if I may.
THE COURT: Be quiet.
Nobody hit you, did they?
THE WITNESS: No.
THE COURT: All right.
Now, you can proceed.
I don't like that sort of nonsense. I want the truth.
BY MR. GOODPASTER:
Q. Senor Fletes——
THE COURT: It is the truth that we want and we will get it.
All right, proceed.
BY MR. GOODPASTER:
Q. Senor Fletes, you stated earlier that you were scared and that was the reason that you made this statement that you saw him.
You just did state that you, yourself, were not threatened or injured in any way. Why is it that you were scared?
A. It scared me when he grabbed me by the arm and he pulled me out of the car.
Q. Did anything else scare you?
A. No.
Q. Is Michael Fletes Sernas your brother?
A. Yes.
THE COURT: Now, let me ask you this. Your brother has testified that he had agreed to pay the defendant Two Hundred Dollars ($200.00).
Were you there when he did that?
THE WITNESS: Yes.
THE COURT: Then you heard it said?
THE WITNESS: Yes.
THE COURT: Well, why did you say that you didn't know anything about Two Hundred Dollars ($200.00)?
THE WITNESS: (No audible response.)
THE COURT: Speak up——loudly—— loudly.
Why did you say that you didn't know about Two Hundred Dollars when you heard

your brother offer him the Two Hundred Dollars ($200.00)?
THE WITNESS: (No audible response.)
THE COURT: Give us the truth.
MR. GOODPASTER: Your Honor, the defendant is not lying.
THE COURT: Be quiet.
MR. GOODPASTER: Your Honor, the court——
THE COURT: I said to be quiet or I will hold you in contempt. I have a right to question the witnesses.
Speak up.
THE WITNESS: About the Two Hundred Dollars ($200.00)?
THE COURT: That is correct.
THE WITNESS: I asked the individual for a ride. If I could find a job I would later reward him with Two Hundred Dollars ($200.00).
THE COURT: You said that to him, you would also pay him Two Hundred Dollars; is that correct?
THE WITNESS: Well—no—well—I don't know what to tell you.
THE COURT: Tell me the truth.
THE WITNESS: Well, this is the truth.
THE COURT: All right. What did you tell him?
THE WITNESS: That I was going to pay him.
THE COURT: You told him that you would pay him Two Hundred Dollars ($200.00)?
THE WITNESS: Yes.
THE COURT: After you got a job?
THE WITNESS: Yes, after I found a job.
THE COURT: Is that the truth?
THE WITNESS: Yes.
THE COURT: The absolute truth?
THE WITNESS: Yes.
THE COURT: All right, proceed.
THE WITNESS: This is the truth.
BY MR. GOODPASTER:
Q. Senor Fletes——
THE COURT: You see, I don't like falsehoods when a man is on the witness stand sworn to tell the truth.

2. BY MR. GOODPASTER:
Q. Your statement says that, "I met a man in Tecate. My brother and two friends was with me, also."
THE COURT: I don't like subordination (sic), either.

---

3. Note 3 on p. 967.

(sic) me when there is any attempted perjury. Do you hear me—and perjury is telling the untruth under oath.

We conclude that the trial judge went too far. A federal judge has the right and duty to facilitate the orderly progress of a trial by direct participation. Questions which aid in clarifying testimony of a witness, expedite examination or confine it to relevant matters are proper if made in a nonprejudicial manner.[4] However, the judge cannot conduct his questioning in such manner as to convey to the jury the impression that he has formed an opinion as to the truth of the witness' statement or the verdict that should be returned.[5] Where the parties are represented by competent counsel, the judge cannot usurp their role. And most certainly he cannot take on the task of the prosecution.[6] This happened here. Without detailing all of the instances of undue interruption, we conclude that the cumulative effect was so pervasive and prejudicial as to require a new trial.[7]

We held in United States v. Brignoni-Ponce, *supra,* that a stop and interrogation by a roving patrol without "founded suspicion" were illegal and the fruits thereof were inadmissible. The opinion referred to United States v. Guana-San-

---

3. THE COURT: Then you jumped the line and you met him again in the United States?

THE WITNESS: Yes, this is the true. [sic]

THE COURT: Then he picked you up and started driving you?

THE WITNESS: Yes.

THE COURT: All rig'.t. That is what I want is the truth.

I don't like subordination.

MR. GOODPASTER: I don't believe it was subordination.

THE COURT: I have my doubts.

MR. GOODPASTER: I believe that he was testifying truthfully the last time.

THE COURT: Now, once again, what is the truth and nothing but the truth? What you said in here?

THE WITNESS: Yes, what is on that paper.

THE COURT: I am showing you Exhibit "A".

That is the true. [sic]

THE WITNESS: All rig'.t.

(Whereupon, a document is passed to the defendant.)

THE COURT: That is what I want is the truth.

MR. GOODPASTER: Your Honor, I take exception. I believe that you threatened the witness.

THE COURT: Proceed.

It looks to me like there has been some swirly business here and I don't like it and I am telling you in the Public Defender's Office that I don't go for that sort of thing.

4. Williams v. United States, 93 F.2d 685 (9th Cir. 1937); Ochoa v. United States, 167 F.2d 341 (9th Cir. 1948). Spindler v. United States, 336 F.2d 678 (9th Cir.

1964), cert. denied 380 U.S. 909, 85 S.Ct. 894, 13 L.Ed.2d 797 (1965). *See also* United States v. Cole, 491 F.2d 1276, 1278 (4th Cir. 1974).

5. United States v. Carrion, 463 F.2d 704, 709 (9th Cir. 1972); United States v. Goodman, 457 F.2d 68, 73 (9th Cir.), cert. denied 406 U.S. 961, 92 S.Ct. 2073, 32 L.Ed.2d 348 (1972), United States v. Porter, 441 F.2d 1204, 1214–1215 (8th Cir.), cert. denied 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971).

"When it becomes necessary during the trial for [the trial judge] to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, he should do so in a firm, dignified and restrained manner, avoiding repartee, limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues."

American Bar Association Project on Standards for Criminal Justice, Standards Relating to The Function of the Trial Judge 81 (Approved Draft 1972). *See also* Special Committee on Standards of Judicial Conduct, American Bar Association Code of Judicial Conduct 10 (1972), Canon 3, A.(3).

6. United States v. Carrion, *supra;* United States v. Nazzaro, 472 F.2d 302, 308 (2d Cir. 1973); United States v. Hoker, 483 F.2d 359, 368 (5th Cir. 1973).

7. United States v. Harris, 501 F.2d 1 (9th Cir. 1974), United States v. Foster, 500 F.2d 1241 (9th Cir. 1974), United States v. Stephens, 486 F.2d 915 (9th Cir. 1973), United States v. Dellinger, 472 F.2d 340, 386 (7th Cir. 1972), cert. denied 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973).

chez, *supra.* We are now informed certiorari has been granted by the Supreme Court in each of these cases.

Reversed and remanded, but the mandate herein will not be issued until the Supreme Court has acted.