942 F.2d 795
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Debra Ann WILLIAMS, Defendant-Appellant.
 No. 90-50272.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1991.
Decided Aug. 22, 1991.
 
 Before D.W. NELSON, O'SCANNLAIN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Debra Ann Williams appeals her conviction for misapplication of bank funds, 18 U.S.C. § 656, and causing the misapplication of bank funds, 18 U.S.C. §§ 2(b), 656. She asserts three claims on appeal, none of which we find to have merit. Accordingly, we affirm.
 
 
 3
 * At the conclusion of her testimony, Williams was questioned by the trial judge regarding certain aspects of the case. This a trial judge may do, see Fed.R.Evid. 614(b), so long as the judge does not "convey to the jury the impression that he has formed an opinion as to the truth of the witness's statement or the verdict that should be returned." United States v. Pena-Garcia, 505 F.2d 964, 967 (9th Cir.1974). Moreover, a judge must not appear to be challenging the credibility of a defense witness. See United States v. Sanchez-Lopez, 879 F.2d 541, 553 (9th Cir.1989); United States v. Mostella, 802 F.2d 358, 361-62 (9th Cir.1986).
 
 
 4
 In the instant case, the district judge strayed briefly into dangerous territory when he asked defendant Williams if Mrs. Potter--whose testimony was inconsistent with the defendant's--was "lying," and when he repeated this type of question with regard to the testimony of Alma Jones. Questions by a trial judge that require a defendant to characterize the testimony of other witnesses as "lies" have the potential to make the trial judge appear to have become an advocate and to have formed doubts about the truth of the defendant's testimony. Such questions go beyond the scope of Fed.R.Evid. 614(b), which permits a trial judge to clarify testimony.
 
 
 5
 However, counsel for Williams registered no objection to the district court's questions, either contemporaneously or subsequently as contemplated by Fed.R.Evid. 614(c). Thus, our review is for "plain error," which will be found "only if an error was highly prejudicial and there was a high probability that the alleged error materially affected the verdict." United States v. Hernandez-Escarsega, 886 F.2d 1560, 1573 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3237 (1990). After reviewing the record with care, we do not find such an error. The evidence of guilt was manifestly strong, and the judge both began and closed the trial by telling the jury that they were not to consider his questioning of a witness "as an indication of what I feel about the case in general or the testimony of that witness in particular" or that he had an opinion as to what verdict they should find.
 
 II
 
 6
 More troubling is the district court's refusal--at the objection of the prosecution--to permit Williams's counsel to ask her (1) if she had used part of the withdrawn money to pay for medical expenses for her son, and (2) why she had withdrawn the funds. The district court based its ruling on the ground that such evidence was irrelevant, a decision we review for an abuse of discretion. United States v. Oren, 893 F.2d 1057, 1060 (9th Cir.1990). An erroneous ruling is subject to harmless error review, however, and will mandate reversal only "if it is more probable than not that it affected the verdict." United States v. Karr, 742 F.2d 493, 497 (9th Cir.1984).
 
 
 7
 During the government's case-in-chief, the government questioned bank auditor Karen Blecha about a conversation she had with Williams following the discovery of the discrepancies, asking her specifically: "Did the defendant say anything about how she had used the money she had withdrawn from the the bank?" Blecha responded: "She said she had used the money for medical purposes for her son and special needs for him." The government then had Blecha explain how she had investigated Williams's claims on this score and found them to be false. The government also introduced a chart prepared by Blecha showing how the money was actually spent. Thus, through Blecha's testimony, the government attacked Williams's credibility and introduced evidence establishing her specific intent to commit the crime.[1]
 
 
 8
 On direct examination of Williams, the defense attempted to rehabilitate her credibility and show that she had not acted with specific intent. The defense inquired: "You used part of the money to pay for medical expenses for your son?" The government objected to this question on relevance grounds, and the court sustained the objection. The defense attempted on five additional occasions to ask Williams the reason why she had withdrawn the funds, but each time the government objected and the court sustained the objections.
 
 
 9
 The district court abused its discretion in cutting off this line of questions. The government was allowed to develop testimony to the effect that Williams had not withdrawn the money to help her son or to pay herself for out-of-pocket expenses. Blecha's testimony undermined Williams's credibility and indicated her guilty intent. Williams's proposed testimony rebutting Blecha's accusations not only was relevant but was central to her defense.
 
 
 10
 The government makes three responses, two of which carry no weight. The government's first argument appears to be that Williams's version of how she spent the money was adequately brought out by the government through Blecha's testimony regarding what Williams told her during their interview together. The government reasons as follows: "Defendant's use of the money was not in itself relevant; her lies concerning her use of the money were relevant, and had already been brought out in the government's case-in-chief." Thus, the government admits that whether or not Williams lied to Blecha was relevant, and then says in effect that Williams was not entitled to respond to Blecha's accusations because Blecha herself had summarized Williams's excuses before demonstrating why they were lies. This reasoning is far fetched. The government's argument assumes Williams lied, though this is precisely the inference that Williams wished to rebut with her testimony. Williams was entitled to give her own explanation of why she withdrew the funds and why Blecha's accusations were unfounded.
 
 
 11
 The government's second argument is that Williams waived any objection to the court's six rulings against her by not making an "offer of proof" as to what she intended to show by her testimony. This argument is unpersuasive. The rules of evidence require an offer of proof only when "the substance of the evidence" offered is not "apparent from the context within which questions were asked." Fed.R.Evid. 103(a)(2). In the present case, it was obvious from the defense counsel's questions that the defense wished to explore the reasons why Williams withdrew the funds. There was no need for an offer of proof.
 
 
 12
 The government's final contention, however, has merit. It argues that any error here was harmless because the evidence of Williams's guilt was overwhelming. We agree. She admitted four withdrawals from her son's account, and a fifth by Alma Jones at her direction. She admitted signing a court order restricting the account and to using a special code to override the restriction when her first attempt to withdraw money from one of the accounts was rejected. This behavior in the light of her knowledge of restricted accounts, her forgery of the names of fellow employees on withdrawal slips, and her lies from the beginning of the investigation through the trial demonstrate without doubt that she acted with intent to defraud the bank. In this regard, she admitted to FBI Special Agent Clothier that what she had done was wrong and that the bank was in a position to have to replace the money she took from her son's account. Under the circumstances, the denial of an opportunity to dispute what she did with part of the money she stole was manifestly harmless.[2]
 
 III
 
 13
 Williams's final argument is that the district court erred in sustaining the prosecutor's objection to her counsel's argument regarding a $15,000 loan. The ground for the prosecutor's objection--that there was no evidence about the loan in the record--was clearly wrong. Viewed in context, however, we find this error to be harmless. We have no doubt that had counsel been able to pursue this with the jury, the outcome of the trial would not have been affected.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.Rule 36-3
 
 
 [1]
 Guilty intent could be inferred from the evidence that Williams had lied to Blecha to cover her tracks
 
 
 [2]
 Although Williams stresses the jury's apparent difficulty in reaching a verdict, this is not sufficient for us to ignore the overwhelming evidence of guilt. Other than one request for reinstruction on the issue of intent, the jury gave no hint as to the source of the trouble in reaching unanimity. Without more we cannot simply assume that any delay in reaching a verdict was attributable to the district court's errors or to uncertainty concerning the sufficiency of evidence of guilt