89 F.3d 847
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fernando FIGUEROA-MENDOZA, Defendant-Appellant.
 No. 95-50358.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1996.
Decided July 9, 1996.
 
 Before: WIGGINS, THOMPSON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mr. Figueroa-Mendoza was convicted of possessing with intent to distribute 71.9 pounds of cocaine in violation of 21 U.S.C. § 841(a)(1). He appeals, arguing: 1) the trial judge rendered the trial fundamentally unfair when he made a remark concerning Figueroa-Mendoza's knowledge that he was transporting cocaine; and 2) the trial judge erred in finding him ineligible for a "downward departure" under U.S.S.G. § 5C1.2.
 
 
 3
 We reject both arguments and affirm. The district judge gave cautionary instructions to the jury which rendered his unfortunate but isolated remark harmless. The appellant's § 5C1.2 argument rests on a misunderstanding of that provision.
 
 
 4
 * Figueroa-Mendoza moved for a mistrial on the ground of judicial misconduct, i.e., that the judge's comment on knowledge improperly influenced the trial. Where a defendant properly preserves an issue of judicial misconduct for appeal, this court reviews for abuse of discretion. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989).[1]
 
 
 5
 Many cases stress the difficult standard a defendant must overcome to show that a verdict should be reversed for improper judicial intervention. "A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." Laurins, 857 F.2d at 537. Furthermore, judicial intervention only merits reversal where it is "clearly prejudicial" as assessed "in light of the evidence of guilt." United States v. Bennett, 702 F.2d 833, 836 (9th Cir.1983) (quotation marks and citations omitted); see also United States v. Milner, 962 F.2d 908, 912 (9th Cir.1992) (no reversal unless prejudice), cert. denied, 506 U.S. 1004 (1992).
 
 
 6
 On the other hand, a number of cases state that "[a] trial court commits reversible error when it expresses an opinion on an ultimate issue of fact in front of the jury or it argues for one of the parties." See, e.g., Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986) (citation omitted).
 
 
 7
 The appellant's claim that judicial misconduct rendered his trial fundamentally unfair turns on the following portion of the prosecution's redirect examination of DEA Agent Chavarria:
 
 
 8
 Mr. Alvarez [prosecutor]: Agent Chavarria, Mr. Yoon [defense counsel] was asking you many questions about your situation in La Paz. You testified that some people grow cocaine, correct?
 
 
 9
 A: Yes.
 
 
 10
 Mr. Alvarez: Those people know they're growing cocaine?
 
 
 11
 A. Yes, they do.
 
 
 12
 Mr. Alvarez: Testified that some people are packaging cocaine?
 
 
 13
 A. That's correct.
 
 
 14
 Mr. Alvarez: Those people know they're packaging cocaine?
 
 
 15
 The Court: Well, that's just your redirect of your direct examination. If you're going to bring in something new, I'll permit you to--that's brought out in cross.
 
 
 16
 Mr. Alvarez: My one question is that everybody who is involved [emphasis added], based on your training and experience with cocaine, knows they're dealing with cocaine?
 
 
 17
 Mr. Yoon: Well, I'm going to object on that, your Honor.
 
 
 18
 The Court: Obvious that they know they're dealing with cocaine. I think we'll terminate with this witness. You may stand down.
 
 
 19
 Although the prosecution had not yet asked a specific question on the knowledge of transporters of cocaine (as opposed to growers and packagers), the jury could easily have understood the judge's comment as an expression of an opinion on the only issue genuinely in dispute--whether Figueroa-Mendoza knew he was transporting cocaine.
 
 
 20
 Immediately after the court's remark, however, it reminded the jurors not to form any opinions on the case until it was submitted to them at the end of the trial. During final instructions, the court also admonished the jury not to "read ... into anything the Court may have said or done any suggestion" as to what verdict to reach.
 
 
 21
 As a general matter, "[i]t is the almost invariable assumption of the law that jurors follow their instructions." United States v. Olano, 113 S.Ct. 1770, 1771 (1993) (quotation marks and citation omitted). The power of curative instructions is dramatically illustrated in United States v. Milner, 962 F.2d 908, 912 (9th Cir.1992), in which this court ruled that later curative instructions "sanitized" inappropriate remarks from the bench. At voir dire, the judge made several cutting remarks indicating the defendant, who was surrounded by court officers, was an extreme security risk. For instance, the judge commented that U.S. marshals were "necessary security, in light of all the facts at the hands of the court." 962 F.2d at 911. This court later held that the judge's later instruction that custody did not indicate guilt sufficiently cured any prejudice flowing from the judge's unfortunate remarks.
 
 
 22
 In this case, the judge made an isolated and ambiguous comment at the end of a day of trial--a comment which was immediately followed by instructions to the jury not to form premature opinions. If curative instructions were sufficient to erase prejudice in Milner, it follows that they were sufficient in this case.
 
 
 23
 Furthermore, the potential for prejudice in this case was softened by the amount of evidence of Figueroa-Mendoza's guilt. See Bennett, 702 F.2d at 836 (assess prejudice "in light of the evidence of guilt"). Agent Sauceda testified that Figueroa-Mendoza was extremely nervous when he was pulled over for inspection. Inspectors then found 71.9 pounds of cocaine secreted in his gas tank. The thrust of Figueroa-Mendoza's defense was that he did not know the cocaine was there--creating the obvious implication that Jiminez, his putative employer, had tricked him into carrying the cocaine across the border. However, the prosecution punched a number of holes in the account Figueroa-Mendoza gave of his activities and thus in his credibility. For instance, Agent Sauceda testified that Figueroa-Mendoza stated he had not been in Mexico for a week at the time of his arrest and that no one else drove the pickup which carried the cocaine. Notwithstanding these claims, a dispatcher at El Centro informed Sauceda that the vehicle had crossed into the U.S. at 7:30 a.m. that day. The trial judge no doubt had this and other such problems in mind when he remarked at sentencing that "the jury didn't believe the Defendant and I didn't believe him one bit. It took the jury, as I recall, maybe an hour, hour and a half to find the defendant guilty."
 
 
 24
 The alleged judicial misconduct in this case was simply not as egregious as the remarks involved in cases where this court has reversed a verdict. Cf. United States v. Bland, 908 F.2d 471, 473 (9th Cir.1990) (prejudice from judge's voir dire remarks concerning charge defendant had raped, tortured, and murdered a seven-year-old girl could not be cured by instruction); United States v. Allsup, 566 F.2d 68, 72 (9th Cir.1977) (judge improperly rehabilitated witness who had misidentified defendant and created impression defendant had frightened witness); United States v. Pena-Garcia, 505 F.2d 964, 967 (9th Cir.1974) (judge accused witness of attempted perjury); United States v. Stephens, 486 F.2d 915, 916 (9th Cir.1973) (at instructions, judge clearly indicated he thought defendant was guilty but instructed jury that it was sole judge of the facts).
 
 
 25
 In sum, the trial judge in this case unintentionally made an isolated remark that the jury could easily have interpreted to express an opinion on Figueroa-Mendoza's knowledge that he was transporting cocaine--the only genuine issue in the case. However, the judge gave adequate curative instructions and, in any event, his remark was not sufficiently prejudicial to merit a mistrial for judicial misconduct. Therefore, the judge did not abuse his discretion by denying Figueroa-Mendoza's motion for mistrial.
 
 II
 
 26
 Figueroa-Mendoza's argument that the district court erred in finding that he did not qualify for a "downward departure" under U.S.S.G. § 5C1.2 rests on a misunderstanding of that provision. Under limited circumstances, § 5C1.2 operates as a "safety-valve" which requires a court to ignore the statutory minimum sentence applicable to an offense and to instead sentence a defendant within his Guideline range. The court sentenced Figueroa-Mendoza at the bottom of his Guideline range. He nowhere argues (except by implication at the end of the Reply Brief) that the court selected the wrong range. Therefore, § 5C1.2 cannot help him.
 
 
 27
 In any event, the district court did not clearly err when it held that Figueroa-Mendoza had not been sufficiently truthful with authorities to justify § 5C1.2 safety-valve relief.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The United States argues that plain error review should apply because the defense did not timely and specifically object to the judge's comment. We disagree. Figueroa-Mendoza sufficiently preserved this issue to justify abuse of discretion review
 The defense stated its "concern" about the judge's comment almost immediately after it occurred. Admittedly, this statement of "concern" was not as specific as it might have been. However, from the context and the judge's response, it is obvious that the defense successfully alerted the judge to the source of its "concern"--that the judge had just said that he believed that everyone who worked with cocaine knew they were dealing with cocaine. Therefore, the defense's "objection" was sufficiently specific. See United States v. Boyd, 55 F.3d 667, 671 n. 3 (D.C.Cir.1995) (objection specific enough if its ground apparent from context).
 As for the timeliness of the objection (and the motion for mistrial which was made at the very start of the next day), "the purpose of requiring a party to timely object is to ensure that the district court has an opportunity to cure any potential errors in the first instance." United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993), cert. denied, 114 S.Ct. 1120 (1994). The defense's statements and motion to the court satisfied this purpose.